**Ethel T. DONNELLY and Delbert Adsit, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**CITY OF EUREKA, KANSAS, et al., Defendants.**

Civ. A. No. 74–230–C6.

United States District Court, D. Kansas.

April 14, 1975.

---

6. Defendant MARTA has suggested that this is possible under the contract as bid.

Michael D. Gragert, Wichita, Kan., for plaintiffs.

Dale L. Pohl, City Atty., Eureka, Kan., Curt T. Schneider, Atty. Gen., John R. Martin, First Asst. Atty. Gen., Topeka, Kan., for defendants.

## ORDER SUSTAINING PLAINTIFFS' MOTION FOR TEMPORARY AND PRELIMINARY INJUNCTIONS

WESLEY E. BROWN, Chief Judge.

This action was filed by plaintiffs Donnelly and Adsit on November 21, 1974, as a purported class action for declaratory and injunctive relief and money damages under 42 U.S.C.A. § 1983, by reason of the termination and/or threatened termination of water services by defendants, City of Eureka and its agents, in violation of constitutional guarantees under the Fifth and Fourteenth Amendments.

Upon notice, and upon the basis of affidavits filed by plaintiffs, this Court issued a temporary restraining order, prohibiting defendants from terminating water service to the individual plaintiffs. Subsequently, an evidentiary hearing was held upon plaintiffs' motion for temporary injunction, at which time the Court heard testimony of plaintiff Ethel Donnelly, and Charles Linn, who is involved in State Department of Health planning for solid waste management. After consideration of this testimony, exhibits introduced at the hearing, and a stipulation of facts and briefs submitted subsequent to the hearing by the parties, the Court determines that plaintiffs, and members of their class are entitled to temporary injunctive relief, insofar as the local ordinance in question fails to provide notice and hearing prior to termination of utility service. The Court further determines, however, that plaintiffs' claim for declaratory relief is premature, and will be denied. These conclusions follow upon the facts pertinent to this action.

The controversy between the parties arises from the efforts of the City of Eureka to implement, by local ordinance, the Solid Waste Management Plan of Greenwood County, Kansas. The County Plan, in turn, was the result of a 1970 Act of the Kansas legislature which was designed to provide for a state-wide solid waste management program, in the interest of the health and welfare of the citizens of Kansas. K.S.A. 65–3401 et seq. The statement of policy, as provided in § 65–3401 is as follows:

"It is hereby declared that protection of the health and welfare of the citizens of Kansas requires the safe and sanitary disposal of solid wastes. The legislature finds that the lack of adequate state regulations and control of solid waste and solid waste management systems has resulted in undesirable and inadequate solid waste management practices that are detrimental to the health of the citizens of the state; degrade the quality of the environment; and cause economic loss. For these reasons it is the policy of the state to: (a) Establish and maintain a cooperative state and local program of planning and technical and financial assistance for comprehensive solid waste management.

(b) Utilize the capabilities of private enterprise as well as the services of public agencies to accomplish the desired objectives of an effective solid waste management program.

(c) Require a permit for the operation of solid waste processing and disposal systems.

The State Act required each county with a population of less than 15,000, and each city located in that county to submit a "workable plan" to manage solid waste to the State on or before June 30, 1974, unless the cities involved elect-

**66**

ed to be governed by the county plan. K.S.A. 65–3405(a).

The City of Eureka did not elect to be excluded from the county solid waste management plan, and thus became subject to the Greenwood County Plan, which was approved by the Board of County Commissioners of Greenwood County on February 1, 1974. (Ex. A) This County Plan, among other provisions, requires weekly urban collection of waste.

In implementing the Greenwood County Plan, the City of Eureka by its governing board, the City Commissioners, did enact a local Ordinance on or about August 26, 1974, under which the City would provide for the collection of all solid waste. In return, the City assessed a $3.25 per month fee against every residential dwelling and a variable fee of not less than $3.25 against each commercial and multidwelling unit within the city. This fee was to be collected by a combined bill for refuse and water service. Under the ordinance, any failure to pay the refuse service charge by the 20th day of the month would cause water service to the property to be terminated.

Plaintiff Donnelly, on or about October 1, 1974, received a combined billing from the City for water service, sewer service and refuse collection for the period ending September 6; 1974, totalling $9.68. She thereupon mailed to the City her check in the sum of $6.43, representing the difference between the total amount, less the $3.25 refuse charge. This check was returned, unaccepted by the City Clerk.

The same sequence of events occurred the following month. No further payments being offered by plaintiff Donnelly, her water service was terminated on or about November 19, 1974 for nonpayment of the refuse collection charge, and she remained without service until the Court issued its temporary restraining order.

When this action was filed, the ordinances and regulations of the City of Eureka and its Water Department did not provide in any manner, for pre-termination hearings and notice of right to same.

The local ordinance of the City of Eureka makes no provision for discontinuation of refuse collection, nor does it provide for any consideration of special circumstances applicable to a specified piece of property, which would make collection of refuse from that property unnecessary.

The State Act to regulate solid waste management systems makes no provision regarding enforcement and collection of fees for refuse services. The Greenwood County Solid Waste Management Plan makes no provision regarding enforcement and collection of fees for refuse service.

There are numerous alternatives available to municipalities for collection of fees to be charged for refuse services. One method has been chosen by the City of Eureka—that of a combined billing for water service, sewer charges, and refuse collection. Courts have consistently held that a city may lawfully discontinue water service for nonpayment of sewer charges, and Kansas law so provides. K.S.A. § 12–631k. In *City of Lawrence v. Robb,* (1954) 175 Kan. 495, 509–510, 265 P.2d 317, the Court held that termination of water service for nonpayment of sewage service was not arbitrary and unreasonable.

At the evidentiary hearing, plaintiff Donnelly explained to the Court the reasons which, in her opinion, would justify a finding that she did not need, and could not use the refuse collection service offered by the City of Eureka. Whatever merit these reasons may have, which the Court does not determine, the point is that she has never been afforded an opportunity by the defendant City to express these views in the setting of a "due process hearing" prior to termination of her water service.

One typical provision used by some municipalities, providing for hearing

prior to termination of utility services, and for an opportunity to be heard regarding entitlement to exemption, was presented by the witness Linn, and appears as Exhibit B:

"DISCONTINUATION OF SERVICES. Refuse service collection and the charges therefor may be discontinued upon a finding by the Sanitation Officer that, due to special circumstances applicable to a specified piece of property, the collection of refuse therefrom is unnecessary. In order to establish such fact, any interested person may file with the Sanitation Officer an affidavit, in a form to be approved by the City Attorney, setting forth sufficient information which, if found to be true, clearly demonstrates that the collection of refuse from the property therein described is not necessary. No such finding shall be made by the Sanitation Officer without at least three (3) days prior notice to the person who has entered into a contract with the city for the collection and removal of refuse from residential establishments. Any such finding and determination shall be binding only for the fiscal year during which or for which such finding and determination is made. The Sanitation Officer may require the filling (sic) of a new affidavit before extending the period of exemption from refuse collection charges."

"CHANGE IN STATUS. Whenever it is determined that the information upon which the Director of Public Works has determined that the collection of refuse from a specified piece of property is unnecessary was or is untrue, the Director of Public Works shall rescind his determination that the collection of refuse from such property is not necessary. In such case, all charges for refuse collection that would have been due except for such determination by the Director of Public Works shall immediately become due and payable, plus interest thereon at the rate of seven percent (7%) per annum from the date that such charges should have been paid. Any person aggrieved by a decision of the Sanitation Officer made pursuant to this section may in writing appeal such decision to the City Council, and the council's decision on the matter shall be final."

At the hearing, and according to the Stipulation of Facts filed subsequent thereto, the Court has been advised that "The City has agreed to provide, by ordinance, for pre-termination hearings and notice of right to same pursuant to due process standards, in return for the Plaintiffs' agreement to dismiss all claims for damages herein against the named Defendants."

The nature of the proposed amended ordinance, and its provisions for notice and hearing were not disclosed to the Court.

At this stage of the proceeding, it is clear that defendants have conceded that due process provisions of the constitution require that notice and opportunity to be heard must be provided to water subscribers before termination of service. When a municipality is the sole source of water service, this service becomes a constitutionally protected entitlement, and the termination of this service must be accompanied by due process procedures. In *Stanford v. Gas Service Co.*, (D.C.Kan.1972) 346 F.Supp. 717, 721, the right was described in these terms:

"... whatever the classification of utility services, be they rights, privileges, or entitlements, such life-sustaining services would seem to fall within the same constitutional protections afforded welfare benefits, wages, drivers' licenses, reputation in the community, and possession of personal property, all as has been previously decided by the United States Supreme Court."

See also *Palmer v. Columbia Gas of Ohio, Inc.*, (6th Cir. 1973) 479 F.2d 153; *Ihrke v. Northern States Power*

*Company*, (8th Cir. 1972) 459 F.2d 566, *vacated as moot*, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72; *Bronson v. Consolidated Edison Co. of New York, Inc.*, (S.D.N.Y.1972) 350 F.Supp. 443; *Hattell v. Public Service Company of Colorado* (D.C.Colo.1972) 350 F.Supp. 240; and *Davis v. Weir*, (N.D.Ga.1971, 1973) 328 F.Supp. 317, 359 F.Supp. 1023, modified, 497 F.2d 139.

In their briefs, the parties have argued the merits of whether or not, under any circumstances, a municipality may terminate utility service for nonpayment of an associated trash collection fee. Plaintiffs, however, have made no argument concerning the constitutionality of the state legislation designed to regulate solid waste management within the State of Kansas; they likewise do not contend that the Solid Waste Management Plan for Greenwood County in any way infringes upon their constitutional rights.

Until such time as the City of Eureka provides for adequate notice, and reasonable opportunity to be heard prior to termination of water service, this Court, or a three-judge court would be unable to apply current legal concepts concerning the adequacy of that notice and hearing in terms of due process requirements. It is readily apparent that vital and perhaps conflicting issues concerning public policy are at work here: first, the serious problems presented by solid waste management and the concern of the State of Kansas in improving the health and welfare of its citizens; second, the means of funding vital services necessary for the health and welfare of all; and third, the interest of each private citizen in obtaining a meaningful right to notice and hearing before termination of a service vital to his individual health and welfare, that is, water service provided solely by the City of Eureka.

■ From the inception of this case, the sole issue was concerned with the validity of the local ordinance, and it now appears that that ordinance is in the process of being amended. When considering the merits of an action brought under the provisions of the civil rights legislation, 42 U.S.C.A. § 1983, the Court must proceed in some definite context with respect to the nature of the powers asserted by the state, and determine ultimate questions in terms of the reasonable and non-discriminatory exercise of those powers. See *Ihrke v. Northern States Power Co., supra*, 459 F.2d 566 at 573.[1]

■ The very nature of this action requires the Court to limit plaintiffs, as representatives of the class, to temporary injunctive relief which would prohibit the City of Eureka from the termination of water service to approximately 1,480 subscribers pending amendment of the local Ordinance. Such amendment must provide notice and a reasonable opportunity to be heard prior to termination of such service.

Plaintiff's prayer for other declaratory relief at this time must be denied. The Court feels certain that the defendant City, with the aid of state planning groups and the Kansas Department of Health, will be able to amend its local plan to such an extent that reasonable opportunity is provided for those persons desiring exemptions from coverage to be fully heard so as to insure that action taken by the municipality will be neither arbitrary, nor unreasonable.[2]

---

1. "Constitutional questions sought to be adjudicated in federal courts 'must be presented in the context of a specific live grievance.' *Golden v. Zwickler*, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969)."

2. The nature of the due process requirement is discussed fully in *Palmer v. Columbia Gas of Ohio, Inc., supra*, 479 F.2d 153, at pp. 165–166:

> "In considering the kinds of due process protection that might be afforded in any given case, the nature of the affected interest, the manner in which it has been adversely affected, the reasons for which it was affected and the viable alternatives

The remaining question to be determined is the question of attorneys' fees to be awarded to prevailing plaintiffs, insofar as their claim to injunctive relief is concerned. The Court is advised that counsel for plaintiffs has expended approximately 30 hours in out-of-court research and preparation, that he spent 3 hours in court during hearings on temporary restraining orders and injunctions, and that out-of-pocket expenses advanced by him total $53.00.

After due consideration, the Court determines that the sum of $1,000.00 is a reasonable attorneys fee under the circumstances of this case. Accordingly,

It is ordered that counsel for plaintiffs prepare, circulate, and submit an appropriate Judgment with temporary injunction to be entered in this action, restraining defendants from terminating water service to plaintiffs, and members of their class, the approximately 1,480 subscribers to water service in the City of Eureka, Kansas. Such temporary injunction shall continue until defendants have prepared and enacted into law an amended Ordinance governing solid waste management within the City of Eureka. Such Ordinance shall provide for notice and a meaningful opportunity to be heard prior to termination of water services to any subscriber within the City of Eureka, Kansas. Such Order shall also provide for an award of attorneys fees to plaintiffs' counsel in the sum of $1,000.00, plus reimbursement of expenses advanced in the sum of $53.00, with costs to be assessed against defendants.

Upon proper showing to this Court that the foregoing Order has been duly complied with, the temporary injunction shall be dissolved.

It is further ordered that the claims of plaintiffs for further declaratory relief and money damages, be, and they are hereby denied, without prejudice, upon the ground that there is no justiciable controversy between the parties, and such claims are premature.

---

to the challenged procedure must be considered, and the injury complained of must be balanced against the good to be accomplished. . . . The due process clause requires, as a minimum, that parties whose rights are to be affected are entitled to be notified of the proposed action, and they are entitled to be heard. . . . It is equally fundamental that the right to notice and to the opportunity to be heard must be granted at a meaningful time and in a meaningful manner. . . ."