Dorothy UHL et al., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NESS CITY, KANSAS et al., Defendants.

Civ. A. No. 75–210–C6.

United States District Court, D. Kansas.

Dec. 5, 1975.

Michael D. Gragert of Wood & Gragert, Wichita, Kan., for plaintiffs.

John R. Martin, First Asst. Atty. Gen., Topeka, Kan., and Jerry M. Smetana, Atty. for City of Plainville, Kan., Plainville, Kan., for defendants.

## MEMORANDUM AND ORDER ON COUNT I

WESLEY E. BROWN, Chief Judge.

This class action was brought by the named plaintiffs, residents of four Kansas cities, on behalf of themselves and those similarly situated, for the purpose of challenging local ordinances which provide for termination of municipal water service upon non-payment of mandatory solid waste collection, or trash, fees. The defendants are Ness City, Kansas, Towanda, Kansas, Plainville, Kansas, Iola, Kansas, and their respective mayors, councilmen and city commissioners.

Count I of the action seeks injunctive relief under the provisions of Title 42, Section 1983 et seq., upon the allegation that the arbitrary and unreasonable termination, or threatened termination, of water services by defendants, deprives, or would deprive plaintiffs of substantive due process of law in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution, in that plaintiffs' property would be arbitrarily and unreasonably seized and taken and plaintiffs' lives and well-being has been, or would be, arbitrarily and unreasonably jeopardized.

Water service to one of the named plaintiffs, Paul Boyer, had been actually terminated by defendant, Towanda, Kansas, at the time this action was filed. Upon application, this Court entered a temporary restraining order, enjoining termination of Boyer's water service pending determination of the merits of plaintiffs' allegations.

At the request of the Court the parties have now filed a stipulation of all facts necessary for proper determination of plaintiffs' claim for injunctive relief, as presented in Count I of the complaint, and after due consideration, the Court determines that plaintiffs' claims in Count I are meritorious and that they are entitled to an order enjoining defendants from acts which the Court finds to be constitutionally impermissible under the circumstances presented in this case.

### FACTS

The following facts are relevant to the instant controversy:

The defendant City of Towanda is a municipal corporation of the third class, with a population of 1,225 persons; the defendant City of Ness City is a city of the third class, with a population of 1,703; the City of Iola is a city of the second class, with a population of 6,817; and the City of Plainville is a city of the third class with a population of 2,416.

All of the individual named defendants, mayors, commissioners, and councilmen, during all times herein material, acted under color of state law by virtue of their respective municipal offices, and/or under color of duly enacted municipal ordinances, and in their official capacity such defendants are responsible for the enforcement of city ordinances.

Each of the cities which is named defendant in this action is the sole source of water utility service to the respective plaintiffs and classes residing within their respective corporate boundaries.

Each of the defendant cities has enacted local ordinances governing garbage and solid waste disposal and management applicable to their respective corporate boundaries. These local ordinances were the result of a 1970 Act of the Kansas state legislature, which was designed to provide for a state-wide solid waste management program, in the interest of the health and welfare of the citizens of Kansas. K.S.A. 65-3401 et seq. This Court has had prior occasion to examine the state act, and a local ordinance designed to effectuate the program in *Ethel T. Donnelly et al., v. City of Eureka Kansas, et al.*, 399 F.Supp. 64, opinion rendered April 14, 1975 (D.Kan.). In that case, the Court found that the ordinance of the City of Eureka failed to provide *procedural* due process, in that, no provision was made for notice, and hearing prior to termination of municipal water service provided by the City.

The State Act requires each county with a population of less than 15,000, and each city located in that county, to submit a "workable plan" to manage solid waste to the State on or before June 30, 1974, unless the cities involved elect to be governed by a county plan. K.S.A. 65-3405(a).

Each of the defendant cities of Towanda, Plainville, Ness City and Iola enacted ordinances regulating solid waste disposal within their corporate limits. The ordinance of the City of Towanda is typical of the plans adopted by the four cities (Ex. A, Stip. Dkt. 38): the City undertakes to collect and dispose of garbage and trash from all residences as a municipal function, and may, by con-

tract, authorize appropriate persons to collect the refuse; residents are required to furnish suitable containers, and no person not authorized by the city may engage in the business of hauling refuse within the city limits; service charges for collection of refuse are set by the city and are added to bills for water service; if the service charge for trash service is not paid, the City may terminate municipal water service to the residence. The Towanda ordinance further provides that termination of water service "shall not prevent City from utilizing any other method of collection" (Ord. No. 244, Ex. A, Stip.)

The ordinance of the City of Plainville provides (Ex. B, Stip. Section 24) that:

A request for water service shall automatically constitute a request for refuse service.

A termination of water service shall automatically terminate refuse service. (Sec. 24) . . .

and

Failure to pay refuse service charges . . . will cause water service to the property to be terminated. (Sec. 28)

Each of the ordinances, in varying respects, prohibits residents of the city from hauling trash, garbage or refuse; burning refuse, or disposing of solid waste "in an unapproved site," etc. Each ordinance provides penalties for violation of its provisions: Towanda—Fine of $5.00 to $50.00; Plainville—Fine, up to $100 and/or 30 days in the county jail; Ness City—Fine, $10 to $100; Iola —Fine, up to $100 and/or 3 months confinement.

It has been stipulated that during the months of June, July, August and September, 1975, the plaintiff Paul Boyer, a resident of Towanda, Kansas, refused to pay for garbage and refuse collection as provided in the applicable ordinance. The plaintiff Boyer, during such periods, did pay that portion of his monthly billing relating to water and sewer service and this payment was accepted by the City. On September 2, 1975, Boyer was given a hearing to show cause why his water service should not be discontinued for refusal to pay the garbage and trash collection fee. The reason given by plaintiff Boyer as to why his water service should not be terminated was that such action would be unconstitutional. Plaintiff Boyer stated that he had not paid the garbage and refuse fee because he had personally disposed of his trash in a sanitary and nuisance-free manner and that he did not need, or desire, the collection service provided by the City. After hearing, the City immediately discontinued Boyer's water service and such termination lasted for approximately 30 hours, until restrained by order of this Court.

Plaintiffs Uhl and Ficken bring this suit as a class action on behalf of themselves and all persons residing within the City of Ness City whose water service has been or may be terminated for failure to pay a mandatory solid waste collection fee.

Plaintiff Boyer brings this suit as a class action on behalf of himself and all persons residing within the City of Towanda whose water service has been, or may be, terminated for failure to pay a mandatory solid waste collection fee.

Plaintiff Russell brings this suit as a class action on behalf of himself and all persons residing within the City of Plainville whose water service has been or may be terminated for failure to pay a mandatory solid waste collection fee.

In their complaint, plaintiffs A. L. Wilson and O. W. Snider allege that they are residents of the City of Iola.

It has been further stipulated that no city named defendant in this action has terminated water service to any of the named plaintiffs, other than plaintiff Boyer, for nonpayment of a mandatory solid waste collection charge, except that the City of Iola has terminated water service to one Lloyd Hook for that reason. Hook is not a named party plaintiff to this action, although a class member.

It is stipulated that each named plaintiff is a water subscriber of his or her

respective city, and that each such plaintiff resides in a household from which solid waste is produced.

It is stipulated that each plaintiff has paid or offered to pay his or her respective municipal water bill.

It is stipulated that each of the named plaintiffs disposes of their respective solid waste in the following manner:

1) Plaintiff Russell, a resident of Plainville, stores solid waste in plastic bags which are kept in a covered 31-gallon galvanized trash can. Each week plaintiff ties the bags and personally hauls them to the Rooks County landfill where he pays a fee for dumping privileges.

2) Plaintiff Ficken, an 83-year old widow and a resident of Ness City, incinerates combustible solid waste on the premises, and deposits noncombustible solid waste in a barrel which is hauled away periodically, every two or three months.

3) Plaintiff Uhl occasionally utilizes municipal trash services. Otherwise plaintiff Uhl hauls most of the solid waste from her household to the county landfill. Other items are removed on an "as-needed" basis by an ex-neighbor.

4) Plaintiff Boyer, a resident of Towanda, transports his own solid waste in a covered 55-gallon barrel to the county landfill on an "as needed" basis.

5) Plaintiff Wilson, a resident of Iola, is on a 12.43 acre suburban lot on which some livestock are kept. Plaintiff Wilson feeds all fruit, potato peelings and garden produce waste to his cattle. All papers which are not transported to a recycling operation are burned on the premises and noncombustible material such as cans, bottles and baling wire are hauled to and dumped in an abandoned country well. Egg shells are buried in a garden plot.

6) Plaintiff Snider, a resident of Iola, has a trash burner in which all combustible waste is disposed of. Some of the garbage is cooked and served to plaintiff's dog. Tin cans and other noncombustible material are placed in a barrel

which is removed from the premises on an "as-needed" basis.

The state laws governing solid waste disposal (K.S.A. § 65–3401 et seq.) do not prohibit individuals from transporting their own waste for disposal, and local governing bodies may permit individuals to do so, provided that the city plan is approved by the State Department of Health. Likewise, the state law makes no provision for termination of municipal water service to customers who fail to pay a service fee for trash collection charges. The manner of enforcing local plans is left to a determination by the local governing body.

There are approximately 626 municipalities in the State of Kansas, and 494 of these cities operate municipal water systems. At least 94 Kansas cities have ordinances governing solid waste disposal which provide for termination of water service for non-payment of trash collection charges. A schedule of these 94 cities appears as Exhibit E to the Stipulation of Facts filed by the parties in this action. (Dkt. 38). By implication, this means that there are over 300 cities within the state which appear to operate under disposal plans which do not provide for termination of municipal water service upon non-payment of trash collection fees.

One alternative form of a waste disposal plan is illustrated by the conclusion of the *Ethel T. Donnelly* litigation which was before the Court this year. *Ethel T. Donnelly v. City of Eureka, supra*, 399 F.Supp. 64 (D.Kan.1975). After the Court's ruling of April 14, 1975, the City of Eureka decided "to remove itself from the trash hauling business," and repealed an ordinance similar to those involved in this action. The City adopted a new ordinance, permitting residents to dispose of their own trash in any manner not in violation of state law and providing that Eureka customers might have the solid waste service charge added to their water bill, if they desired to do so. No provision was made, however, for termination of water service for non-payment of the trash fee, this being a matter left

entirely to civil remedy between the contract hauler and the customer.[1]

The Kansas legislature has granted both counties and cities special powers to collect assessments for solid waste programs. K.S.A. § 65–3410 provides that unpaid fees for solid waste services can become liens on real property and can be treated in the same manner as *ad valorem* taxes, thus subjecting the real estate to possible sale in satisfaction of delinquent charges.[2]

## MEMORANDUM OF LAW

◼ The termination of utility services, pursuant to municipal ordinances, is action taken under "color of state law" for purposes of 42 U.S.C. § 1983. *Donnelly v. City of Eureka* (D.C.Kan.1975) *supra*, 399 F.Supp. 64; *Davis v. Weir* (N.D.Ga.1971) 328 F.Supp. 317, 359 F.Supp. 1023, modified on other grounds, 497 F.2d 139.

◼ While municipal corporations are not, per se, "persons" under Section 1983, when individual city officials are sued in their official capacities, they are proper parties and are liable for deprivations occasioned by them under order of city ordinances. *Adams v. City of Colorado Springs* (D.C.Colo.1970) 308 F.Supp. 1397, *aff'd* 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555, *rehear. den.* 400 U.S. 855, 91 S.Ct. 25, 27 L.Ed.2d 93; *United Farm. of*

*Fla. H. Proj., Inc. v. City of Delray Beach,* (5 Cir. 1974) 493 F.2d 799.

◼ The fact that defendant cities may not be "persons" under Section 1983 does not preclude their being proper parties to this action under the federal question and pendent jurisdictional powers of this Court. *Harper v. Kloster* (4 Cir. 1973) 486 F.2d 1134; *United Farm. of Fla. H. Proj., Inc. v. City of Delray Beach, supra.*

In this action, plaintiffs make no claim that it is unconstitutional for the city to require that trash be removed weekly from residential premises; no claim is made that the city may not take upon itself, as a municipal function, the collection of solid waste, or authorize its collection by a licensed contractor; and there is no question raised that the mandatory collection charges assessed by each city are themselves excessive, or arbitrary. The sole constitutional issue for consideration in Count I of this action is whether or not municipal officials may terminate an exclusive source of ·water service for failure to pay a trash collection fee.

The general rules regarding judicial inquiry into ordinances which exercise the police power of a state or municipality are set out at 56 Am.Jur.2d Municipal Corporations, § 490, pp. 538–539:

> The rule is firmly established that it is a judicial question to be resolved by

1. Section 10 of the new Eureka Ordinance No. 2693 provides: (Exhibit, Dkt. # 22, *Donnelly v. City of Eureka*, 399 F.Supp. 64)

Section 10. *Commercial Hauling.* In order to assist residents of the city in the removal of solid wastes the City may from time to time and subject to its sole discretion contract with one or more commercial haulers to provide collection service for those customers submitting a written request to the City Clerk for such service. When such a request is filed the monthly charges for the collection service shall be added to the monthly water bill and such bills shall be collected by the City Clerk as a combined bill for refuse and water service. The City, however, shall not be responsible to the contractor for the failure of any customer to pay the trash collection bill and further the City shall not be responsible to the customer for the services performed or failure of performance by the contractor.

2. K.S.A. § 65–3410(a)(4) provides in pertinent part that:

The delinquent fees . . . shall constitute assessments against the respective parcels of land and are a lien on the property for the amount of such delinquent fees. . . . The lien created attaches upon recordation . . . . .. The assessment may be collected at the same time and in the same manner as ordinary county *ad valorem* property taxes are collected and shall be subject to the same penalties and the same procedure and sale in case of delinquency as provided for such taxes. All laws applicable to the levy, collection, and enforcement of county *ad valorem* property taxes shall be applicable to such assessment.

Any city collecting solid waste fees or charges may collect delinquent fees or charges for garbage and trash storage, collection and disposal in the manner provided for counties.

the courts upon proper presentation whether a particular ordinance is a proper exercise of municipal police power, whether the facts of a particular case or situation warrant the assertion of such power, and whether the attempted regulations have a proper and rational relationship to the objects of the police power, such as the public health, safety, morals, welfare, etc., and have for their aim the protection and preservation of such objects. To uphold a municipal ordinance of a regulatory nature enacted under general charter power, the court must be able to see that the ordinance tends in some degree toward the prevention of some offense or the preservation of the public health, morals, safety, or welfare; hence attempted police restrictions will be declared invalid where they have no relation to any object which the municipality, in the exercise of its police power, may legally accomplish, and are unreasonable, arbitrary, and oppressive . . . . .

As to the Court's inquiry into "reasonableness" (56 Am.Jur.2d § 491, p. 541):

In determining the reasonableness or unreasonableness of such an ordinance the court should take into consideration the purpose and effect of the ordinance and the circumstances and conditions of the case at the present time. If there is room for fair debate as to whether a municipal ordinance is arbitrary or unreasonable, the court will not substitute its own judgment for that of the legislative body charged with the primary duty and responsibility of determining the question. But where the ordinance is manifestly unreasonable and arbitrary and offends against prohibitions within the federal or state constitution, it becomes the duty of the judiciary to declare the ordinance invalid.

The Kansas Supreme Court recently applied the general test of "reasonableness" in ruling that an ordinance which prohibited all "huckstering and peddling" was void, inasmuch as the public purpose of such legislation, i. e., avoidance of "nuisance" and protection of children from vehicular traffic, could be accomplished by other, more reasonable regulations. *Delight Wholesale Co. v. City of Overland Park* (1969) 203 Kan. 99, 453 P.2d 82. In so ruling, the Court stated, at p. 103, 203 Kan., at p. 85, 453 P.2d:

However, while the police power is wide in its scope and gives a governmental body broad power to enact laws to promote the health, morals, security and welfare of the people, and further, a large discretion is vested in it to determine for itself what is deleterious to health, morals, or is inimical to public welfare, *it cannot under the guise of police power enact unreasonable and oppressive legislation or that which is in violation of the fundamental law.* (Emphasis supplied.)

The Kansas court recognized that, in each instance, the court must carefully consider all circumstances in weighing the public benefit against individual rights, stating at 203 Kan. pp. 104–105, 453 P.2d pp. 86–87:

In *McCulley v. City of Wichita,* 151 Kan. 214, 98 P.2d 192, 127 A.L.R. 312, this court approved the rule that the reasonableness of an ordinance involves a determination as to whether it is for the public benefit of the community in general, and whether the means adopted to produce the public benefit are reasonably necessary to accomplish that purpose and not unduly oppressive upon individuals. We stated at page 225 at page 199 of 98 P.2d of the opinion:

"It is well to remember the validity of such legislation must be determined by an application of the enactment to the particular facts and circumstances involved and that the reasonableness of the enactment is a question for courts to determine in the exercise of sound judicial discretion. No arbitrary rule, therefore, can with justice be made applicable to every circumstance. The concern

of courts must be and is with the preservation and evolvement of principles which constitute helpful guides to the process of administering justice. . . ."

■ When a municipality is the sole source of water utility service, the right to such service becomes a constitutionally protected entitlement, and arbitrary and unreasonable termination of that service will violate due process standards of the federal constitution. *Davis v. Weir, supra*, 328 F.Supp. 317; and see, *Stanford v. Gas Service Co.* (D.C.Kan. 1972) 346 F.Supp. 717.

■ While the Court may sympathize with problems facing today's cities in their efforts to finance laudable public services, and promote the general health and welfare of their residents, the Court is of the opinion, and must conclude, that in this instance, under all of the circumstances presented by the record and stipulation of fact, the termination, or threatened termination of public water supplies for failure to pay an unrelated trash collection fee, is arbitrary and unreasonable, and violates plaintiffs' rights to due process of law under the Fourteenth Amendment.

By threatening to deprive residents of water, an absolute necessity of life, in order to collect a service charge for other municipal functions, the defendant cities have chosen an effective and oppressive collection method. It is apparent to the Court that this means of enforcing an ordinance bears no reasonable relationship to its purpose, i. e., to protect the general welfare and improve the living conditions of city residents. Termination of all access to water would immediately threaten the health, life, and well being of any resident of the defendant cities.

Under the record here, it is apparent that the defendant cities have other, less drastic alternatives and means for enforcing their solid waste collection programs through the penalty provisions of the respective ordinances, by civil remedy for collection of unpaid services charges, and/or by means of the power granted to them by the state legislature to assess unpaid fees and charges as liens against real property.

■ Counsel for plaintiffs has supplied the Court with an accounting of the time he has expended to date in this action, in support of plaintiffs' claim for attorney fees. Such accounting reflects 32½ hours out of court preparation, and 2¼ hours in court presentation of the matters involved in Count I of this action. In addition, the accounting reflects an expenditure of $198.14 in expenses.

After due consideration, the Court determines that the sum of $1,000.00 is a reasonable attorneys' fee under the circumstances, and that an award of this sum, plus provision for reimbursement of expenses in the sum of $198.14 should be awarded plaintiffs in connection with their claim under Count I.

In accordance with the foregoing,

It is ordered that counsel for plaintiffs prepare, circulate, and submit an appropriate Judgment upon Count I of the complaint in this action, enjoining defendants from terminating water service to plaintiffs, and members of their class. Such Judgment shall further provide for an award of attorneys fees to plaintiffs' counsel in the sum of $1,000.00, plus reimbursement of expenses advanced in the sum of $198.14, with costs to be assessed against defendants.