No. 37,391

THE COW CREEK VALLEY FLOOD PREVENTION ASSOCIATION by Gilbert Shuler, Arthur Lancaster, S. P. Rowland, J. C. Brown, Mary Hadley, John Hadley, Eldon Hadley, Charles Rowland and Earl Parker, *Appellants*, v. THE CITY OF HUTCHINSON, ALBERT D. BELL as Mayor, FORREST MCCANDLESS, L. E. BAIRD, W. C. HUTCHINSON, and W. G. WOLESLAGEL as City Commissioners, etc., *Appellees*.

No. 37,392

G. W. GLICK, E. DAVIDSON, and L. C. SIMPSON, *Appellants*, v. THE CITY OF HUTCHINSON, ALBERT D. BELL as Mayor, FORREST MC-CANDLESS, L. E. BAIRD, W. C. HUTCHINSON, and W. G. WOLE-SLAGEL as City Commissioners, etc., *Appellees*.

(200 P. 2d 279)

Opinion filed November 13, 1948.

*Walter F. Jones,* of Hutchinson, argued the cause, and *J. Richards Hunter* and *Harry H. Dunn,* both of Hutchinson, were with him on the briefs for the appellants.

*Wesley E. Brown,* of Hutchinson, argued the cause, and *D. C. Martindell, W. D. P. Carey, Edw. B. Brabets, R. J. Gilliland, John F. Hayes, C. W. Miller,* and *Albert Teed,* city attorney, all of Hutchinson, were with him on the briefs for the appellees.

The opinion of the court was delivered by

COWAN, J.: These appeals involve the validity of flood-control plans at Hutchinson, Kan. The plaintiffs sought to enjoin the proceedings initiated by the city to avert inundation of the city.

Plaintiffs in case No. 37,391 are owners of property lying north and west of Hutchinson and west of Cow creek. They allege that

parts of their lands are about to be taken by eminent domain proceedings for right of way for such flood-control improvements.

The plaintiffs in case No. 37,392 are resident taxpayers of the city of Hutchinson. They claim that their lands are without the flood area and, therefore, will not be benefited by the flood-control program.

After the pleadings had been made up, the plaintiffs in the two cases filed motions for judgments on the pleadings in their favor. These motions were overruled. The defendants filed oral motions for judgments on the pleadings in their favor. The district court sustained these latter motions and entered judgments for the defendants. From all of these rulings the plaintiffs have appealed. We shall refer to the parties as they appeared in the court below.

The flood-control program was outlined by the army engineers pursuant to statutes of the United States. These plans called for dikes or levees running north from Cow creek and a diversion channel whereby the floodwaters from Cow creek will be channeled around the city and so avoid flooding parts of the city of Hutchinson. Plaintiffs direct attention to the floods of 1929 and 1941 whereby part of the city was inundated by breaking of the dikes, but claim that a large portion of the city was not affected by the water from Cow creek and that a large portion of the water which overflowed from Cow creek northwest of Hutchinson passed north of the city and never returned to the city or to Cow creek, but became surface water. Plaintiffs say that under the proposed plans the city will divert a large amount of water, including ordinary surface water and water from natural watercourses which would ordinarily never enter Hutchinson; that as a result the plan will protect more property in area and value outside of Hutchinson than in the city, while the cost thereof will be charged to the city of Hutchinson. Other claims of the plaintiffs will be noted in dealing with the grounds of plaintiffs' motions for judgments on the pleadings.

The city claims it is acting under the authority of chapter 12, article 6, of the General Statutes of Kansas, 1935, and the amendments thereto, and under the additional authority of chapter 391, Laws of 1945, being chapter 19, article 33, of G. S. 1945 Supp., and the amendments thereto.

In August, 1943, the city, by resolution, sought the aid of the army engineers in the development of the city's present flood-

control project. On March 30, 1945, the city passed a resolution agreeing to hold the United States free from damage due to construction of flood-control works, to provide without cost to the United States the right of way for such project, to bear the expense of alterations and relocations of highways, all as required by the federal statute. The act of congress of June 22, 1936, as amended August 28, 1937, provides for the payment by the federal government of the cost of the actual construction work. On April 19, 1946, the city adopted and published a resolution setting forth the necessity for flood protection and providing for estimates and report of the city engineer. The city filed its application with the chief engineer of the division of water resources and the state corporation commission for permission to construct the flood-control project. These applications were duly approved by the state corporation commission and the chief engineer of the division of water resources on May 27, 1946. On June 4, 1946, the city passed ordinance 2887 providing for the condemnation of property for the purpose of furnishing the right of way. This ordinance directed application be made to the judge of the district court for appointment of commissioners in condemnation as provided by law. Section 3 of the ordinance declared that all of the property in the city of Hutchinson was equally benefited by the project and designated the city of Hutchinson as the benefit district.

It is contended by plaintiffs that this section 3 is invalid because the title is not sufficiently broad to include such section. The city has not yet provided for the payment of the right of way by the issuance of bonds nor has it deposited the money with the city treasurer and had him issue his certificate as required by the condemnation statute. While the plaintiffs raise various questions of illegality, their principal claims in that respect are embodied in their motions for judgment on the pleadings. We shall now review those claims.

The first contention of the plaintiffs is that no ordinance was ever passed by the city of Hutchinson providing for flood-control proceedings. The city did enact ordinance No. 2887, finding the necessity of condemnation proceedings and directing that they be taken. The city also passed a resolution on April 19, 1946, setting forth the necessity for flood control. Either the ordinance or the resolution was sufficient. (*Skelly Oil Co. v. Kelly*, 134 Kan. 176, 5 P. 2d 823.)

The next contention of the plaintiffs is that ordinance 2887 is void because it contains more than one subject, does not make provision for the issuance of bonds to pay the awards and violates the cash basis law, includes lands not necessary for right of way. As we shall hereinafter point out, the objection that it contains more than one subject and therefore section 3 is invalid is immaterial inasmuch as section 3 is not necessary to the ordinance. The claim that it violates the cash-basis law is without merit. Until the land is taken, there is no obligation upon the city to pay therefor. Under the statutes relating to condemnation in cities, it is not necessary to provide for the funds with which to pay the cost of lands condemned until copy of the report of the commissioners is filed with the city treasurer. The city treasurer then pays the awards to such persons as shall be entitled thereto and files a copy of such report, together with his statement as to the payment of the awards, with the register of deeds. (G. S. 1935, 26-204.) Right of possession does not vest with the city until the report has been filed. So far as the record discloses in this case, those steps have not yet been completed. Moreover, it would be impossible for the city to provide for the payment of the awards until it ascertains the amount thereof. The city has indicated by its answer in this case that it intends to issue bonds to pay the awards. Under such circumstances, the cash-basis law has no application. G. S. 1935, 13-2602, specifically exempts from the operation of the cash-basis law those situations where provision has been made for the issuance of bonds. The fact that land which is not needed for the flood-control program has been included in the ordinance constitutes no objection to the validity of the ordinance as a whole, since the individual property owners whose land is not required can raise that question in the condemnation proceedings or in an appeal therefrom. The answer of the defendants shows that all or the greater part of such surplus land has been excluded by the city by the enactment of subsequent ordinances.

The third objection is that the city is attempting to divert surface waters upon the lands of others without authority of law. This claim ignores the express provisions of G. S. 1945 Supp. 12-635, which section reads as follows:

"That the governing body of any city of the state of Kansas in or near where there is, or through which there flows, a natural watercourse, the overflow from which in the event of high water is liable to cause injury to any

bridge, street, alley, public or private property, may, in order to prevent said injury, acquire by condemnation and eminent domain, or purchase, within or without said city limits, within *ten miles therefrom,* the land and easements necessary to construct drains, canals and artificial watercourses, or to widen and straighten existing drains and watercourses, or to construct the necessary levees and embankments, and may change and raise the grade of streets and alleys and the approaches to bridges, and *raise said bridges, or construct bridges where necessary,* and *may widen existing drains, channels and canals,* and acquire the necessary outlets therefor beyond the limits of the city, and *may cause any and all other necessary work, construction and improvements to be made to protect said city* and public and private property therein located *from floods and damage by overflow of said natural and artificial watercourses:* *Provided, however,* That none of the provisions of this act shall be held or construed to repeal or affect the power of drainage districts now organized under the provisions of chapter 215 . . . of the Session Laws of 1905, and amendments thereto." (Emphasis supplied.)

The grant of power to the city by this statute is broad enough to warrant the diversions mentioned. Under this same heading, plaintiffs also contend that the city will violate G. S. 1935, 24-105. That section, however, relates only to obstructions to watercourses and diversion of surface waters by private individuals and not by the city. Moreover, G. S. 1945 Supp., 12-635, *supra,* is the later act and controls over the earlier one. (G. S. 1935, 24-105.) This later act (G. S. 1945, Supp., 12-635) gives the city express authority to make and complete any and all necessary work, construction and improvements to protect said city from floods and damage by overflow of natural and artificial watercourses. If surface water is diverted upon the lands of others by the city's acts, the city will be liable to such landowners in an appropriate action to recover therefor if the loss is compensable.

Objections four, five and seven may be treated together. These again proceed upon the theory that the city has no authority outside the city limits. Counties and townships are municipal corporations created by the state and their powers, rights and duties may be changed as the legislature sees fit. The same may be said of cities. As these subdivisions of the state are creatures of the legislature, that body has ample authority, in the exercise of its discretion, to confer power upon cities to do those things outside of the city limits theretofore done by counties or townships. G. S. 1945 Supp., 12-635, *supra,* is the later law on the subject and is, therefore, controlling. In that statute the city is given power to change natural or artificial watercourses within ten miles from the city limits,

to construct drains, canals, artificial watercourses, widen, straighten existing watercourses, construct necessary levees and embankments, change the grades of streets and alleys and the approaches to bridges, raise bridges, construct bridges and effect any and all work, construction and improvements necessary to protect the city from floods. A more comprehensive grant in connection with the city's flood control plan can hardly be imagined. If bridges are to be built, the doing of such work and the cost thereof have been cast upon the city. As we have said, if the plaintiffs have suffered or will suffer any compensable damage, then they can look to the city in an appropriate action for that purpose, but the exercise by the city of the power granted to it under this statute constitutes no basis for injunctive relief to plaintiffs.

The sixth objection made by the plaintiffs is that the city is attempting to proceed under chapter 12, article 6, G. S. 1935, but that the proceedings do not show the city has in any wise complied with the statute. By resolution and ordinance the city has established the prerequisite basis for invoking the terms of G. S. 1945 Supp., 12-635, and also G. S. 1945 Supp., 19-3307. Condemnation proceedings have been initiated to secure the necessary right of way. Guaranties have been made to the federal government as required by federal statutes. Hence, the plaintiffs' claim in this regard is not justified.

The next claim of the plaintiffs (eighth) is that the city intends to spend the public money of Hutchinson to protect more property in acreage and value outside of Hutchinson than within Hutchinson. The flood-control program is primarily for the benefit of the citizens of Hutchinson. If it is necessary to protect the lands of others outside the city, in order to afford the necessary protection to the city of Hutchinson, such consequence is but incidental to the main purpose. It would be much simpler for the city if the watercourses to be guarded against were all located within the city limits, but the topography is otherwise. The city must accept nature as it is. Improvement of watercourses must be effected, in a large measure, where the watercourses exist. To this end, the legislature has authorized the city to carry on its flood-control program not only within the city limits but at any point within ten miles from the city limits. The city cannot compel the lands outside the city limits which may be benefited to bear a proportionate share of the cost, because the legislature did not provide for the compulsory in-

clusion or the assessment of such lands. The city, no doubt, is desirous of requiring such lands to contribute to the cost but it has no statutory authority to do so. The city must accept the situation as it exists. It has legislative authority to proceed even though its flood-control program may benefit landowners outside the city.

The plaintiffs, as their ninth ground, complain that the condemnation commissioners filed a report signed as a "committee." This was apparently a typographical error, but in any event they were the commissioners appointed by the court in the condemnation proceedings instituted by the city. The report was accepted by the district court. No one was deceived by the report nor by the notice given by the commissioners, as both recited that the commissioners had been duly appointed as commissioners by the district court. Other acts of the commissioners are complained of, such as the conduct of the commissioners in preparing their report and viewing the lands. These irregularities can be complained of only by the affected individual property owners and only in the condemnation proceedings or on appeal from the awards. These irregularities are not matters which vitiate the proceedings.

We now come to the tenth objection which is really double in character. The first portion claims that the city engineer attempted to designate a benefit district. The answer of the defendants shows that such was not the case; that the city engineer was only making a report. Of course, he could not create or designate a benefit district, as that must be done by the governing body of the city. The other phase of the objection deals with the attempt of the city to designate the whole city as a single benefit district to pay for the cost of the improvement by general levy upon all property within the city. The city claims to be acting under G. S. 1945 Supp., 12-635 et seq., and also under G. S. 1945 Supp., 19-3301 et seq. It is true that the city may proceed under either statute provided that at the time it takes each particular step authority exists for such step. The fact that the city may have proceeded under a section which was not applicable does not destroy the validity of such step provided there was elsewhere statutory authority for the step taken at the time it was taken. (Abbott on Public Securities, p. 593, and authorities cited.) However, the city cannot proceed under one section of a statute which is favorable to it and reject other sections which are unfavorable to its course. As far as the pleadings show, up to the present time the city has taken no step which requires it

to choose irrevocably between chapter 12, article 6, and chapter 19, article 33. The city has indicated its intention to issue general obligation bonds to pay for the cost of the improvement. Bonds issued by the city are general obligations of the city as a whole (G. S. 1935, 10-112) but when it comes time to determine how these bonds shall be paid, it will be necessary for the city to elect whether it is proceeding under chapter 12, article 6, or chapter 19, article 33. The first of these statutes provides for the payment of the cost of the bonds from the property specially benefited as determined by appraisers, and if the benefits so assessed are insufficient to pay the cost of the improvement, then the balance shall be assessed against the city generally and paid for by a levy of a general tax upon all taxable property within the city. On the other hand, the latter of the two statutes mentioned provides for payment of the bonds by tax levied upon all of the taxable *tangible* property within the city, thereby designating the city as a whole as a taxing unit. If the city follows the steps prescribed by the first statute, then it will have to create a benefit district and assess the benefits as therein provided, and pay only the balance of the cost from a general tax levied upon all of the property in the city. On the other hand, if it follows G. S. 1945 Supp., 19-3307, then the cost shall be paid by a general tax upon all of the tangible property within the city limits, but the city will be bound by the limit on indebtedness therein contained. The city cannot follow portions of chapter 19, article 33, favorable to it and reject the burdens thereof. The city's course must be consistent. It, of course, may take advantage of any amendment to the act, provided such amendment is in effect at the time the city takes the step therein authorized.

It is the contention of the plaintiffs that both of these statutes are unconstitutional. In this opinion it is not necessary to pass upon the validity of chapter 19, article 33, *supra,* other than to refer to the consolidated cases of *Board of County Commissioners v. Robb,* No. 34,477 and No. 34,478, this day decided, which sustain the constitutionality of that statute. The plaintiffs, in questioning the constitutionality of chapter 12, article 6, rely heavily upon the case of *Putnam v. City of Salina,* 136 Kan. 637, 17 P. 2d 827. In considering the weight to be given any opinion, we must look to the questions then before the court and the state of the record on appeal. As is stated in that opinion, there was but a limited review by this court for want of a transcript and lack of any motion

attacking the findings of fact of the trial court. (See opinion on motion to modify, 137 Kan. 731, 22 P. 2d 957.) The trial court had found as follows:

" '. . . The evidence shows, and the court finds, that the principal benefit from the construction of the Smoky Hill river project will accrue to private property in the city of Salina lying east of the Smoky Hill river. . . .

" 'The principal damage from flood waters is to the real estate over which it flows. The principal benefit of flood control is to real estate.

" 'Under the proceedings contemplated by the city all of the cost of the improvement except such as might be assessed to the lots and tracts of real estate specially benefited, must be raised by the assessment of real estate not benefited and by the assessment of all the personal property in the city. . . .' " (136 Kan. 637, 647.)

This court was there bound by the findings of the trial court so made and what was decided there must be limited to a situation very similar in character to that described by such findings, namely, principal cost of improvement to be paid for by property not benefited. The validity of original section 11, which provided for the payment of the cost of the flood-control project by a general levy upon all of the property of the city, was not before this court in that case. That section had already been amended prior to the occurrence of the matters passed upon in the city of Salina case, *supra*. By the amendment the cost was to be assessed against a special benefit district, with remainder of the cost against the city as a whole. The actual question before this court there was whether original section 11 could be subsequently amended so as to save the statute, as a whole. This court held that it could be so done. The language in the opinion referring to the infirmity in the original section was, therefore, *dictum*. In the opinion it was recognized that the law progresses from time to time with reference to the limitations on the use of eminent domain for the protection of private property in flood-control projects. This court there said, in part:

"One objection to the act of 1917 with all its amendments, which is stressed by counsel for plaintiffs and which seemed serious to the trial court, is that the statute contemplates that the flood-control project may be undertaken for the benefit of public and private property; and it is suggested that eminent domain cannot be invoked for the benefit of private property. The progress of the law has put some limitations on that doctrine. Following the disastrous floods in 1903 and 1904, which devastated the valley of the Kaw, legislation was enacted (Laws 1905, ch. 215) which authorized the creation of flood-control districts (called drainage districts) whose principal purpose and function is to protect private property from floods, and where the protection of public prop-

erty, bridges, schools, and the like, is or may be an inconsequential proportion of the protection afforded. Any such drainage district was given the power of eminent domain, the theory being that when a great amount of private property requires protection against recurring hazards of inundation any such hazard may become a matter of public concern, and the power of eminent domain may rightfully be exercised, because the public welfare is in fact affected. [p. 645.]

. . . . . . . . . . . . . . .

"In our examination of the statute of 1917 and its various amendments we are unable to discern such infirmities in it as would vitiate any and every flood-control project which might be undertaken under its provisions. A city may be so situated that the only practical means of averting its flood hazards would be by some engineering project, to pay for which all real property within the corporate limits, public and private, should be charged with benefits and burdens fairly assessed and imposed. But the city of Salina may not be so circumstanced. At least, this court cannot take judicial notice of that fact, . . . [p. 646.]

. . . . . . . . . . . . . . .

". . . The fact that both public and private property are to be benefited by the proposed flood-control project does not render it illegal, provided each kind of property is fairly charged with the benefits accruing thereto and its proper share of the cost of the improvements fairly assessed against it. But real property within the city not subjected to flood hazard, or which will receive no practical benefit from the projected improvement, cannot be taxed for its construction. It must also be held that the general mass of *personal* property within the city cannot be taxed to pay the cost of this flood-control project where the property to be benefited thereby is wholly or principally real estate. The fact that private property is to be the principal beneficiary of a flood-control project does not render such project one of mere private concern nor forbid the authorization of the power of eminent domain to accomplish it." (p. 647.)

That opinion was rendered in 1933. The progress of the law with reference to flood control has advanced very considerably since that date. In 1933, so far as Kansas was concerned, flood-control projects were local in nature and consisted largely of embankments and dikes to contain the floodwaters to the original channel of the stream coupled with the straightening of the channel and removing of obstructions therefrom. Today, flood-control projects are not only river-long in their plan but interstate in character. What may be done toward retarding the rapid runoff of rainfall on the upper regions of the Missouri and the Ohio may be more effectual to prevent a devastating flood in Louisiana than any dikes and embankments which could be constructed in the latter area. Not only are the channels of rivers enlarged today and made capable of carrying more water by the building of dikes and embankments but effective

work is being done in flood control by retarding the rapid flow of torrential rains by means of forestation of watersheds, terracing of the land and erection of diversion lakes whereby the floodwaters may be trapped and held for future use for agriculture or from which the water can be gradually emptied into the channel of the river at low water periods. The federal government is spending large sums of money, and, in coöperation with the states and their subdivisions, is supervising a unified system of flood control for various rivers. It is now recognized that floods constitute national, as well as state-wide, disaster, affecting the health and prosperity not only of the community but of a very wide area. With this change in the situation in mind, we cannot approve of the broad statement in the city of Salina case, *supra,* that the cost of the flood-control program benefiting private as well as public property cannot be met by a bond issue to be paid by the levy of a general tax upon all of the taxable property of the city. The statement was not necessary to decision and was beyond the issues there presented.

Matters of taxation are mainly questions for the legislature, and courts are reluctant to interfere with the legislative determination. In the case of *Morton Salt Co. v. City of South Hutchinson,* 159 F. 2d 897, the circuit court of appeals, tenth circuit, by a divided court, ordered the temporary injunction to be continued until the case was tried on its merits. There seems to be, however, no conflict between the majority and minority opinions in that case as to the general law. It was there said:

"It is no constitutional defense to a tax that the taxpayer is not directly benefited thereby, or is less benefited than others who pay the same or less tax. *Kelly v. Pittsburgh,* 104 U. S. 78, 26 L. Ed. 658; *Thomas v. Gay,* 169 U. S. 264, 280, 18 S. Ct. 340, 42 L. Ed. 740; *Houck v. Little River Dist.,* 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266. For example, 'every citizen is bound to pay his proportion of a school tax, although he has no children, or is not a resident, and this applies also to corporations; of a police or fire tax, although he has no buildings or personal property; or of a road tax although he never used the road. In other words, a general tax cannot be dissected to show that, as to certain constituent parts, the taxpayer receives no benefits. So property within the limits of a municipality is subject to local taxation although it derives little or no benefit from the municipal government.' Cooley, sec. 89, p. 214. The fact of living in an organized society carries with it the obligation to contribute to its general welfare, whether or not the recipient of particular benefits. Furthermore, the legislative determination that the property taxed will be benefited by the public improvement for which it is assessed is ordinarily conclusive. *Thomas v. Kansas City Southern R. Co.,* 261 U. S. 481, 43 S. Ct. 440, 67 L. Ed. 758." (p. 900.)

In *Chesebro v. Los Angeles Co. Dist.*, 306 U. S. 459, 83 L. Ed. 921, 59 S. Ct. 622, the supreme court of the United States said:

"In the absence of flagrant abuse or purely arbitrary action, the State, consistently with the federal Constitution, may establish local districts to include real property that it finds will be specially benefited by drainage, flood control, or other improvements therein, and, to acquire, construct, maintain and operate the same, may impose special tax burdens upon the lands benefited. . . . And where, within the scope of its power, the legislature itself has found that the lands included in the district will be specially benefited by the improvements, prior appropriate and adequate inquiry is presumed, and the finding is conclusive. . . . But where the district was not directly created by the legislature and there has been no determination by it that their property will be benefited by the local improvements the owners are entitled, under the due process clause of the Fourteenth Amendment, to be heard by some officer or tribunal empowered by the State to hear them and to consider and decide whether their lands will be specially benefited. . . .

"The legislature need not adopt any form of statement or finding for, in the enforcement of restraints imposed by the federal Constitution upon the power of States to assess and collect taxes, this Court regards the substance of their enactments as controlling rather than mere forms of expression employed." (p. 463.)

Here, the legislature, by the passage of chapter 19, article 33, has itself fixed the bounds of the taxing district as the city or county and in the absence of abuse or bad faith, its determination is conclusive that the property within the district has been benefited. On the other hand, if the fixing of the taxing district is by subordinate body of the state, then the property owners are entitled to an opportunity to be heard on whether they are benefited or not. However, this provision for hearing need not be in the law itself. (*Mt. St. Mary's Cemetery v. Mullins*, 248 U. S. 501, 63 L. Ed. 383, 39 Sup. Ct. 173.) A tax is not unconstitutional because one taxpayer is directly benefited and another one is only indirectly benefited, nor is the tax invalid because one taxpayer is benefited to a greater extent than another, or that one taxpayer pays more than another.

Reverting to the subject of indirect benefits, it is to be noted that the importance of flood control has changed with the experience of mankind. It may safely be said now that flood control affects the sanitation of the community, the paving of streets (part of which may have been paid for by all of the citizens of the city) and the general prosperity and welfare of the city. Disastrous floods affect the service of public utilities, overflow the sewers serving the city, prevent the flow of sewage, interfere with transportation along the streets and highways, and prevent egress and ingress by the com-

munity contiguous to a city and upon which a city may depend to a large extent for its retail and wholesale business. In addition, floods often damage both real and personal property. In fact, tangible personal property is frequently damaged to a greater extent by a disastrous flood in a city than real property. The larger portion of intangible personal property is not affected since most of it is subject to the five-mill levy limit. But even intangible personal property may be lessened in value by floods. It cannot be said that the legislature acted arbitrarily or abused its power in declaring a city a single taxing district or in providing that all property, both real and personal, within a city shall be liable to taxation to pay the expense of a part of a flood-control project. There are a few cases in which a tax has been enjoined but they generally are like *Myles Salt Co. v. Ibera Drainage Dist.*, 239 U. S. 478, 60 L. Ed. 392, 36 S. Ct. 204, where allegations of arbitrary action, no benefits to the plaintiffs, and inclusion of plaintiffs' property solely for the purpose of deriving revenue, were admitted by a demurrer to the petition. More directly in point are cases of the type of *Mount St. Mary's Cemetery Asso. v. Mullins*, supra, where it was said:

"It is urged that the Cemetery Association was not benefited by the assessment. But the court found, with evidence to support its conclusion, that the sewers served to carry away surface water; and that there was no evidence to show that the cemetery would not have been benefited as to sanitation as a result of the construction of the sewers. It is well settled that unless such assessment is arbitrary and unreasonable, the extent of the benefit, essential to justify the assessment, was a matter within the control of the local authorities." (p. 505.)

If the city is proceeding under chapter 12, article 6, the benefits are in a large measure assessed through benefit districts, but if the city proceeds under chapter 19, article 33, the legislature has fixed the taxing district coextensive with the city and, under the pleadings in this case, the action of the legislature is conclusive on the question of benefits.

The last objection raised by the plaintiffs is "that all of the property named in the condemnation ordinance was not viewed or appraised by any commissioners or committee." This is a question which can be taken care of by the individuals whose property has been condemned. Insofar as the pleadings or abstract in these cases show, we find nothing other than what has been heretofore mentioned which might be raised under the last ground of the objection.

Turning to the objections of the plaintiffs to the sustaining of the

motions of the defendants for judgment on the pleadings, we find that plaintiffs contend the pleadings presented certain questions of fact which should not be ruled adversely to them without the taking of evidence. We shall note them in the order in which they appear. The first is that the city does not intend to appoint the necessary appraisers to assess benefits. The time for appointing such appraisers has not yet arrived and the court cannot presume in advance of that time that the governing body of the city will not follow the law.

The next contention is that "the city is intending to and will tax all the property in Hutchinson, both real and personal, to pay for the protection of property not affected by water." What we have said as to the previous contention applies equally well to this. The objection is premature.

Plaintiffs further contend that taxes on the property in the city of Hutchinson will protect more property outside of Hutchinson than in it. We have already pointed out that such fact does not render the proceedings invalid.

Further objections are that the city has not entered into the contract with the county to build bridges or to participate in the project and that a certain bridge could not be built without the vote of the people of the county. The statutes authorize the city to take care of these matters as part of the cost of the project and such costs, if necessary, will have to be borne by the city. A vote of the citizens of the county is, therefore, unnecessary. The legislature has vested in the city authority to make the necessary changes in bridges, watercourses, and highways; coöperation with townships and the county is unnecessary. Other contentions are that the city proposes to divert a large amount of surface water and water from other watercourses upon the lands of others. We have already disposed of these matters in dealing with the plaintiffs' motions for judgment. Along the same line the plaintiffs urge that the city intends to dig large ditches across highways without the consent of township boards. These matters are all covered by the statute. The legislature has supreme power and it can give the city jurisdiction over township roads to the extent necessary to make the improvement and supersede the township's authority. Townships and counties are but instrumentalities of the state and are subject to the will of the legislature.

The last objection urged is that the city has abandoned the pro-

ceedings. There is nothing in the record to show that the city has abandoned any of the proceedings in any manner authorized by the statute.

It follows that the judgment of the trial court on the matters properly before it at the time of the filing of the motions was correct. Of course, if the city shall, in the future, elect to follow the procedure set forth in chapter 12, article 6, it must appoint the necessary appraisers and assess the benefits as therein provided if that is required by the statute as it exists at the time such step is reached in the course of the proceeding. On the other hand, if the city chooses to follow chapter 19, article 33, it will be bound by the limitations on indebtedness therein contained. If, in the future, the city does not follow the procedure prescribed by the statutes as they exist at the time future successive steps are taken, then the plaintiffs or others interested may apply to the district court in a proper proceeding to enjoin the city, but upon the record now before this court, it cannot be said that the proceedings to date should be enjoined. Judgments on the pleadings were correctly entered for the defendants.

The judgments are affirmed.