No. 48,742

MARCELLA ZERR, *et al., Appellants,* v. LLOYD TILTON, *et al.,* Individually and as the Gove County Commission, *Appellees,* R. E. RINGER, *Intervenor.*

(581 P.2d 364)

Opinion filed July 15, 1978.

*Alan L. Rupe,* of Holland & Rupe, of Russell, argued the cause and was on the brief for appellants.

*John R. Eland,* of Sloan & Eland, of Hoxie, argued the cause and was on the brief for appellees.

*Allen Shelton,* of Clark & Shelton, of Hill City, argued the cause and was on the brief for intervenor.

*Per Curiam:* This action was filed by several Gove County residents to enjoin the Gove County Commission from assessing fees, pursuant to a resolution adopted by the Commission, for collection of solid waste materials by the county's designated solid waste collector. The trial court found that the Gove County solid waste resolution and the contract between the Commission and R. E. Ringer, for collection of the waste, were valid and enforceable and denied the petition for a permanent injunction. Several of the original plaintiffs have appealed.

In the spring of 1975 the Gove County Commission adopted a resolution to put into effect a solid waste management system in compliance with K.S.A. 65-3401, *et seq.,* and also entered into a contract with R. E. Ringer for the collection of the solid waste. As Ringer had an interest in the issues before the court, he was allowed to intervene.

The learned trial judge filed his memorandum opinion and judgment as follows:

"On August 18, 1976, the plaintiffs herein filed an action for a temporary and a permanent injunction against the Board of County Commissioners of Gove County, to restrain them from holding hearings or assessing fees or charges under a resolution adopted March 31, 1975, establishing a solid waste management system for Gove County.

"On September 14, 1976, a hearing was held on plaintiffs' application for a temporary injunction. The plaintiffs appeared by their attorney, Alan L. Rupe. The defendants appeared by their attorney, John Eland. R. E. Ringer was permitted to intervene and appeared by his attorney, Allen Shelton. The facts necessary to the determination of that issue were stipulated by the parties. From these stipulated facts it appeared that there were essentially two groups of plaintiffs. The first and largest group consisted of Gove County residents who admittedly create solid waste at their residence or other establishment, but who claim the right to dispose of such waste by some method other than the use of the contractor provided for in the resolution and by contract of the County Commission with R. E. Ringer, executed March 24, 1975. This group sought to enjoin the placement of delinquent service fees or charges as an assessment against their real estate for collection as an ad valorem tax on the grounds that the resolution was unconstitutional as applied to them and illegally exceeded the authority of the enabling statutes.

"The Court declined to issue a temporary injunction to this group on the grounds that no irreparable injury would result from placing their delinquent charges on the ad valorem tax rolls inasmuch as the Court, upon final hearing on the petition for permanent injunction, could enjoin the collection of such tax or proceedings to enforce collection, if the tax were found illegal, under K.S.A. 60-907(a).

"The second and smaller group of plaintiffs consisted of persons who claimed to generate no solid waste during certain months, or who had been doubly charged, or who were entitled to a low income allowance. The resolution provides for hearings before the Board of County Commissioners for correction of errors in charges, and the resolution exempts people who generate no solid waste during certain periods and allows a reduced charge for low income. The Court declined to enjoin the scheduled hearing before the Board of County Commissioners with respect to plaintiffs in this second group, on the grounds that such a hearing was the proper forum to resolve their complaints in the first instance.

"On October 19, 1976, this case came on for trial on the issuance of a permanent injunction. The appearances were the same as at the hearing on the temporary injunction, and the parties again stipulated to the facts necessary for decision. The matter was then argued and taken under advisement by the Court.

"From the pleadings, the stipulated facts, the briefs and arguments of counsel, the Court finds as follows:

FACTUAL CONCLUSIONS

"There is no factual dispute and the stipulations of fact, numbered 1 through 9 and filed October 19, 1976, are incorporated herein. Summarized for purposes of this opinion, the facts are as follows:

"On March 31, 1975, the Gove County Commission adopted a resolution establishing a solid waste management system for Gove County, Kansas. The Commission had previously, on March 24, 1975, contracted with R. E. Ringer

to provide for collection of solid waste in Gove County and maintenance of the solid waste disposal area. The contract is for a five year term which exceeds the terms of the present commissioners.

"The resolution provides for collection, at least once each week, from all residences billed for city water in the five cities in Gove County, and from commercial, industrial, governmental and institutional establishments in Gove County whether billed for water service or not. The resolution provides a schedule of fees with single family residences set at the lowest rate and commercial, industrial, governmental and institutional divided into categories depending upon volume. Unpaid service charges, after a hearing before the Board of County Commissioners, are placed on the tax rolls as liens against the real property.

"The plaintiffs are generally persons whose fees are unpaid and constitute persons who dispose of and claim the right to continue to dispose of their solid waste by composting, burning, transporting to land owned or rented by them, using another contractor, or generating less than one bushel of solid waste per week. At least some of these persons could qualify to transport solid waste in compliance with all regulations of the state.

LEGAL CONCLUSIONS

"1) The plaintiffs challenge the resolution on the grounds that its classifications violate equal protection and that it is contrary to the authority granted in the Kansas Solid Waste Collection Act, K.S.A. 65-3401 *et seq.* They further challenge the legality of the contract with R. E. Ringer because it extends beyond the term of the present commission.

"2) The Constitutional Issue:

"It is apparent that the Gove County Resolution distinguishes between city residences and agricultural property or farm residences because it classifies as residential for service purposes, only, property within cities or so close thereto as to be on city water. It is also apparent that volume of use has been considered with respect to institutional, industrial, commercial, or governmental use where several categories of charges are provided but not in respect to residential use where one minimum charge is created. The plaintiffs' argument is that a distinction between city and farm property is unreasonable, or a distinction between agriculture and commercial enterprises is unreasonable and that all Gove County property should, to some extent, bear a proportionate burden of the solid waste management problem. The plaintiffs further suggest that to allow charges for differing volumes within the commercial, industrial, institutional and governmental class and not with the residential class is likewise unreasonable.

"To some extent plaintiffs constitutional argument is premised upon their interpretation of SECTION 4(a) of the resolution which permits the contractor at his option to pick up solid waste from areas other than those for which a service charge is made. The plaintiffs' argument is that this permits farms to utilize the service at no charge while placing the entire burden on city residences or commercial and other enterprises. There is nothing in the contract or resolution

which prohibits the contractor from charging for such optional service or requires the contractor to furnish such service. There is nothing in the stipulated facts indicating such free service has ever been furnished or contemplated. The Court concludes that plaintiffs' interpretation of SECTION 4(a) of the resolution is erroneous and that this section has no bearing on the constitutionality of the classifications of the resolution.

"Some general principles regarding equal protection are in order. '. . . Traditionally, the test utilized in determining if a legislative enactment violates equal protection principles is whether the classification bears a rational relation to the purpose of the legislation. . . . The legislature is presumed to act within its constitutional power despite the fact the application of its laws may result in some inequity. . . . The equal protection clause goes no further than to prohibit invidious discrimination.' *Manzanares v. Bell*, 214 Kan. 589 [522 P.2d 1291 (1974)], at page 609.

" '. . . There is no precise application of the rule of reasonableness in classifying, and equality permits many practical inequalities. There need not be an exact exclusion or inclusion of persons and things . . . The State enjoys a wide range of discretion in distinguishing, selecting, and classifying and it is sufficient if a classification is practical and not palpably arbitrary. . . .' *Manzanares*, supra, page 612.

"*Henry v. Bauder*, 213 Kan. 751, Syl. 2 [518 P.2d 362 (1974)]. 'The constitutional principle of equal protection does not preclude the State from drawing distinctions between different groups of individuals, but does require that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.'

"The constitutional principles above are equally applicable to county government. K.S.A. 65-3405 requires Gove County to develop a solid waste management plan. The protection of the health and welfare of the citizens requires the safe and sanitary disposal of solid waste. K.S.A. 65-3401. The plan should delineate areas where management systems are in existence and areas where solid waste management systems are planned to be available within a ten year period. K.S.A. 65-3405(c)(1); provides for extension consistent with needs of whole areas which will not contribute to pollution nor constitute a public nuisance. 65-3405(c)(3); and take into consideration existing plans, population trend projections, engineering and economics so as to delineate the area which may reasonably be expected to be served within ten years. 65-3405(c)(4).

"Viewed on the foregoing principles the plaintiffs' constitutional attack must fail. The basic distinction between cities and isolated farm residences or agricultural property bears a reasonable relation to the disposition of solid waste for the protection of the public health. Agricultural property generates little or no solid waste. Farm residences may dispose of their waste on their own land, K.S.A. 65-3409, and the only danger of nuisance is to the farmer's family, not the public. The disposition of waste, including garbage, on property within a city carries an inherent danger of public nuisance. The regulation of the movement of waste

through city streets, with its inherent danger of offensive and unwholesome odors has long been recognized as being within the public police power as bearing some relation to public health. *O'Neal v. Harrison,* 96 Kan. 339 [150 Pac. 551 (1915)]; *Kirksay v. City of Wichita,* 103 Kan. 76 [173 Pac. 12 (1918)]. It is not economically feasible (K.S.A. 65-3405 [*c*][4]), to provide such service to isolated farmsteads. Within the cities, the service is available to all and all are treated equally. *Henry v. Bauder,* supra.

"Likewise, there can be little argument that commercial, industrial, institutional and governmental establishments generate waste generally on a larger scale than residential property. Further, many such establishments have a need for pickups more frequently than once per week. Such considerations justify not only a different classification from agriculture but also a fee charge which varies with the volume and the number of pickups. It is to be noted that the monthly service charge in this class for minimum pickups and volume is the same as for residential property. Again, persons within like classifications are treated equally and the service is available to all in the class.

"The plaintiffs real objection to the Gove County Solid Waste Management Plan is not that the classification violates equal protection, but that the service is mandatory. From the stipulations it is readily apparent that the majority of the plaintiffs feel they have limited solid waste which they wish to transport and dispose of in their own manner without paying a service charge for a service they reject. They complain of a burden (the service charge) with no benefit (a service they reject and do not use.)

"The statutory argument on this point is more persuasive, but on the constitutional grounds the argument fails.

"Mandatory solid waste systems under the Kansas Act have twice been in the federal courts. *Donnelly v. City of Eureka, Kansas,* 399 F. Supp. 64; *Uhl v. Ness City, Kansas,* 406 F. Supp. 1012. In both cases the ordinances have been struck down because the service charge was tied to water shut-offs, but the mandatory service was not attacked. The reason is simple. The right to dispose of waste as one sees fit does not carry the same constitutional protection as does the right to water. The plaintiffs' constitutional objection to mandatory service was answered long ago in *O'Neal v. Harrison,* supra, at page 342. '. . . It is conceded that the city may regulate the disposition of garbage, and impose rigorous rules as to the time and manner in which it shall be moved, because of the offensive and unwholesome odors arising from it. But it is argued that anyone has a right, of which he cannot lawfully be deprived, to haul it through the streets, so long as he conforms to the prescribed regulations - - that the conferring of a monopoly in that respect is not necessary to enforce them, that it sustains no relation to their enforcement, and is not reasonably adapted to promote that end. But manifestly obedience to the rules laid down for the handling of garbage may be more easily compelled - - the method adopted may be more efficient - - if it is all handled by one concern. . . .' (emphasis supplied) See also 56 Am. Jur. 2d, Municipal Corporations, etc., Sec. 455-465.

"Moreover, a tax is not unconstitutional because one taxpayer receives a greater benefit from a public improvement or service than another. *Cow Creek Valley Flood Prevention Ass'n v. City of Hutchinson,* 166 Kan. 78, 90, [200 P.2d 279 (1948)]. The existence of a special benefit from a public improvement is to be determined by the administrative body, not the Courts, in the absence of palpable injustice. *Hurley v. Board of County Commissioners,* 188 Kan. 60, Syl. 1 [360 P.2d 1110 (1961)].

"3) The Statutory Issue:

"At the outset it is recognized that if the resolution or the contract exceed or abuse statutory authority they should be declared invalid and unenforceable by this Court. *Schulenberg v. City of Reading,* 196 Kan. 43 [410 P.2d 324 (1966)], at page 52: '. . . Courts have no supervisory power over the policy of municipal legislation and are not permitted to substitute their judgment for that of the governing body of the city. . . . Courts can only interfere to curb action which is *ultra vires* because of some constitutional impediment, or lack of valid statute, or because action under a valid statute is so arbitrary, capricious, unreasonable or subversive of private rights as to indicate a clear abuse rather than a *bona fide* exercise of power. . . .'

"The Gove County solid waste resolution and contract are the result of the Kansas Solid Waste Management Act, K.S.A. 65-3401, *et seq.* The act requires counties to develop a solid waste management plan, K.S.A. 65-3405, provide for the operation of a solid waste processing facility or disposal area, K.S.A. 65-3407, and authorizes cities and counties to provide for storage, collection, transportation, processing and disposal of solid waste, together with collection of fees and power to contract out their responsibilities, K.S.A. 65-3410. The actual plan is left to local authorities under rather broad guidelines and subject to regulations of the Secretary of Health and Environment.

"The plaintiffs contend that the Gove County resolution exceeds statutory authority and rely on two statutes. K.S.A. 65-3409 deals with prohibited acts. Section (a) prohibits dumping of solid waste on the surface of the ground or in the state waters without a permit. The statute then creates an exception as follows:

. . . Provided further, that this provision shall not prohibit individuals from dumping or depositing solid wastes resulting from their own residential or agricultural activities onto the surface of land owned or leased by them when such wastes do not create a public nuisance or adversely affect the public health.'

"The plaintiffs argue that this proviso gives them the right to transport solid waste anywhere in the county and dump on land owned or leased by them, and the commission resolution may not prevent this nor impose a service fee on those who operate under this statute.

"Such a construction is not merited. The proviso does nothing more than exempt persons who can comply therewith from obtaining a permit to avoid an unlawful act under the first sentence of the statute. The plaintiffs construction would permit numerous small dumps all over Gove County by persons who could

manage to purchase or lease a dump site, when the express purpose of the entire act is to control solid waste disposal areas, K.S.A. 65-3407, and eliminate undesirable and inadequate solid waste management practices, K.S.A. 65-3401. A fair construction of the proviso is that it was intended only to exempt farm or rural property, for which an adequate and economically feasible collection system could not be devised, from obtaining permits.

"The plaintiffs make further references to K.S.A. 65-3410(*a*) which in connection with the counties' power to create a solid waste management system uses the phrase, 'including the levying of fees and charges upon persons receiving the service,' and also authorizes a 'schedule of fees to be imposed on real property . . . revenue from such fees to be used . . . where such services are provided.'

"The plaintiffs claim is that they don't receive the service and accordingly the above provision exempts them from the fees. Again, plaintiffs' construction is strained. The collection service is available to each plaintiff. Pickup service is furnished at least once a week to all persons who are billed. The fact that plaintiffs voluntarily chose not to avail themselves of the service is not susceptible of the construction that they are not 'receiving the service' or that fees are imposed or revenue used 'where such service is not provided.' The Gove County resolution does not lack statutory authority or exceed the authority granted. It does not constitute an arbitrary abuse of the broad discretion granted by the enabling legislation.

"4)  The Contract Issue:

"The county may contract with a private individual to carry out any or all of its solid waste management plan under K.S.A. 65-3410(*c*). The contract of March 24, 1975, with R. E. Ringer for a primary term of five years is authorized by this state. When a county commission contracts beyond its term the following rule applies:

> "*State, ex rel., v. City of Garnett,* 180 Kan. 405, [304 P.2d 555], at page 409: 'And the test generally applied is whether the contract at issue, extending beyond the term, is an attempt to bind successors in matters incident to their own administration and responsibilities or whether it is a commitment of a sort reasonably necessary to protection of the public property, interests or affairs being administered. In the former case the contract is generally held invalid and in the latter case valid.'

"Solid waste disposal is an ongoing problem vitally concerned with the public health and welfare. Private contracts are expressly authorized. Absent the contract the county would have made considerable expenditures or commitments on men and equipment to carry out its responsibilities of solid waste management. There is no question but what such a contract is reasonably necessary to the protection of a public interest rather than an incident of a single administration.

"The Court is aware that Gove County could have developed a solid waste management program which might have been more palatable to the plaintiffs. Strict regulation or licensing of private transportation coupled with a use charge at the disposal site for example. In absence of unconstitutionality, abuse of statutory

authority or unreasonableness to the point of fraud, Courts have no power to substitute their judgment over the legislative judgment of the elected county commission. *Schulenberg,* supra.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Gove County solid waste resolution of March 31, 1975, and the contract with R. E. Ringer of March 24, 1976, are valid and enforceable; that the plaintiffs are not entitled to a permanent injunction to prevent their delinquent service charges from being placed on the tax rolls, and that the defendants have judgment herein for their costs."

We have carefully reviewed the record, find no error, and adopt the opinion of the trial court.

The judgment is affirmed.