Dorothy UHL, Lillie Ficken, Leo J. Russell, Paul Boyer, A. L. Wilson and O. W. Snider, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

NESS CITY, KANSAS, Basil Marhofer, Mayor Paula McCreight, Councilwoman, Larry Antenen, Councilman, Gomer Stukesbary, Councilman, Larry Schwartz, Councilman, Paul Ricketts, Councilman, Towanda, Kansas, Terry W. Douglass, Mayor, John R. Cogan, Council President, Gerald D. Brower, Councilman, Gerard W. Lehman, Councilman, Lynn E. Barker, Councilman, Thomas G. Pyle, Councilman, Plainville, Kansas, Jerry Staab, Mayor, Paul Hancock, Councilman, Max A. Hutton, Councilman, Barry Gilliand, Councilman, Francis M. Malin, Councilman, Jack Turnbull, Councilman, Iola, Kansas, Jack E. Hastings, Mayor, Jerry L. Skidmore, Commissioner, Jerry Witherspoon, Commissioner, Defendants-Appellants.

No. 77–1662.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 13, 1978.
Decided Jan. 12, 1979.

6. The relevant statutory text is quoted in note 5, *supra*.

Michael D. Gragert of Hiebsch, Robbins & Tinker, Wichita, Kan., for plaintiffs-appellees.

Philip A. Harley, Asst. Atty. Gen., Topeka, Kan. (Curt T. Schneider, Atty. Gen. and John R. Martin, First Asst. Atty. Gen., Topeka, Kan., with him on brief), for defendants-appellants.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a final judgment in a class action law suit brought pursuant to 42 U.S.C. § 1983 by the residents of certain Kansas municipalities against the named municipalities (and all other municipalities similarly situated) and their officials. The plaintiff sought declaratory, injunctive and monetary relief for violations of their Fourth, Fifth, and Fourteenth Amendment rights, the actions complained of being terminated or threatened termination of water utility services for failure to pay a mandatory trash collection fee.

The district court entered judgment granting injunctive relief on Count I of the complaint. *Uhl v. Ness City, Kansas,* 406 F.Supp. 1012 (D.Kan.1975). The remaining counts were dismissed.

The issue initially argued before this court on appeal is whether the termination of water utility services pursuant to a municipal ordinance for failure to pay a mandatory trash collection fee constitutes a violation of federally guaranteed rights under the Fourth, Fifth and Fourteenth Amendments of the Constitution. On its own this court raised the question whether termination of water service was permitted by state law in view of Kan.Stat.Ann. § 65–3410. Supplemental briefs were requested on that issue, which have been received and considered by this court.

The facts on which the lower court's decision was based were stipulated. These included that:

1. The named defendants were acting under color of state law;

2. The cities named are the sole source of water utility service to the plaintiff class;

3. Each city has ordinances containing provisions for terminating water service for nonpayment of the trash collection fee;

4. No named city had terminated water service at that time (except to plaintiff Boyer and one Lloyd Hook, a class member) for nonpayment of the trash fee;

5. At least 94 Kansas cities have ordinances providing for termination of water service for nonpayment of a refuse charge;

6. Each plaintiff is a water subscriber and has offered to pay or has paid the municipal water bill; and

7. The named plaintiffs disposed of solid waste in other manners.

No claim is made that mandatory charges are excessive, nor is it contested that the cities may mandate and/or preempt the task of garbage removal. *See Zerr v. Tilton,* 224 Kan. 394, 581 P.2d 364 (1978). No *procedural* due process violations are claimed. *Cf. Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

The substantive due process questions raised by these ordinances are interesting and substantial. State courts considering similar ordinances have split on the legality of using water service cutoffs to force payment of a trash collection fee, without detailed discussions of federal substantive due process. *Compare City of Breckenridge v. Cozart,* 478 S.W.2d 162 (Tex.Civ.App.1972) and *Cassidy v. City of Bowling Green,* 368 S.W.2d 318 (Ky.App.1963), with *Garner v. City of Aurora,* 149 Neb. 295, 30 N.W.2d 917 (1948). *See also, Owens v. City of Beresford,* 201 N.W.2d 890 (S.D.1972); *Edris v. Sebring Util. Comm'n,* 237 So.2d 585 (Fla. Dist.Ct.App.1970) (other utility services). Do we apply the reasonableness standard of review set forth in *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) and its successors, applicable to legislation in the economic area, the stricter scrutiny applied when legislation impinges upon fundamental rights, *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), or some in-between standard? *See Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); Comment, *Uhl v. Ness City, Kansas: Termination of Collateral Municipal Services as a Violation of Substantive Due Process,* 61 Iowa L.Rev. 1403 (1976). *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 18, 98 S.Ct. 1554, 1564, 56 L.Ed.2d 30 (1978) declared, "Utility service is a necessity of modern life; indeed, the discontinuance of water or heating for even short periods of time may threaten health and safety."

■ We do not reach the constitutional questions, however, as it is a long-standing principle that courts ought not to do so in the absence of compelling necessity. *E. g., Spector Motor Co. v. McLaughlin,* 323 U.S.

101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944). Here we are convinced that the means utilized by these cities to collect delinquent solid waste fees is not permitted under the applicable law of Kansas.

In 1970 Kansas embarked upon a comprehensive statewide program to improve control of solid waste management for the express purpose of promoting environmental quality and removing detriments to the health and welfare of its citizens. 1970 Kan.Sess.Laws, Ch. 264, appearing now as amended, in Kan.Stat.Ann. §§ 65–3401 to –3419. Under the statute counties and cities were empowered to enact ordinances for the collection and management of solid wastes within their boundaries. In 1972 specific provisions were added to permit levying of fees for trash removal. 1972 Kan.Sess.Laws, Ch. 239. In 1974 the statute was again amended to include comprehensive instructions with respect to the fees and specific provisions for collection of them. 1974 Kan.Sess.Laws, Ch. 257; Kan. Stat.Ann. § 65–3410.

As presently in effect Kan.Stat.Ann. § 65–3410 reads, as pertinent to our inquiry:

(a) Each city or county or combination of such cities and counties may provide for the storage, collection, transportation, processing and disposal of solid wastes generated within its boundaries; and shall have the power to purchase all necessary equipment, acquire all necessary land, build any necessary buildings, incinerators, transfer stations, or other structures, lease or otherwise acquire the right to use land or equipment *and to do all other things necessary for a proper effective solid waste management system including the levying of fees and charges upon persons receiving service.* [Emphasis added. Omitted here are specific provisions directed to counties.]

*   *   *   *   *

*Any city collecting solid waste fees or charges may collect delinquent fees or* charges for garbage and trash storage, collection and disposal *in the manner provided for counties.*

(b) In carrying out its responsibilities, *any* such *city* or county *may adopt ordinances,* resolutions, regulations and standards for the storage, collection, transportation, processing and disposal of solid wastes which shall be *in conformity with the rules,* regulations, standards and procedures *adopted by the secretary [of health and environment] for the storage, collection, transportation, processing and disposal of solid wastes.* (Emphasis added.)

The provisions of Kan.Stat.Ann. § 65–3410(a) relating to counties, referenced above, expressly states:

The fees may be established, billed, and collected on a monthly, quarterly or yearly basis. Fees collected on a yearly basis may be billed on the ad valorem tax statement. Prior to the collection of any fees levied on real property by the board under this section, the board shall notify affected property owners by causing a copy of the schedule of fees to be mailed to each property owner to whom tax statements are mailed in accordance with K.S.A.1973 Supp. 79–2001, or any amendments thereto.

*Any fees authorized pursuant to this section which remain unpaid* for a period of sixty (60) or more days after the date upon which they were billed *may be collected thereafter by the county as provided herein.*

(1) At least once a year the board of county commissioners shall cause to be prepared a report of delinquent fees. The board shall fix a time, date, and place for hearing the report and any objections or protests thereto.

(2) The board shall cause notice of the hearing to be mailed to the property owners listed on the report not less than ten (10) days prior to the date of the hearing.

(3) At the hearing the board shall hear any objections or protests of property owners liable to be assessed for delinquent fees. The board may make such revisions or corrections to the report as it deems just, after which, by resolution, the report shall be confirmed.

(4) The *delinquent fees* set forth in the report as confirmed *shall constitute assessments against the respective parcels of land and are a lien on the property for the amount of such delinquent fees.* A certified copy of the confirmed report shall be filed with the county clerk for the amounts of the respective assessments against the respective parcels of land as they appear on the current assessment roll. The lien created attaches upon recordation, in the office of the county clerk of the county in which the property is situated, of a certified copy of the resolution of confirmation. The assessment may be collected at the same time and in the same manner as ordinary county ad valorem property taxes are collected and shall be subject to the same penalties and the same procedure and sale in case of delinquency as provided for such taxes. . . . (Emphasis added.)

Thus the statutes prescribe a specific method for collection of unpaid charges. To support the ordinance of the defendant cities here involved we must find that the cities are not restricted to this one fee collection technique.

Prior to the adoption of a constitutional home rule amendment, the Kansas courts always stated that the only authority a city has is that given by state law, *Brown v. Arkansas City,* 135 Kan. 453, 11 P.2d 607 (1932), and no powers are conferred except those necessary to the effective exercise of powers expressly granted. *E. g., City of Garden City v. Miller,* 181 Kan. 360, 311 P.2d 306, 309 (1957). In applying those rules, it was held that where a state statute provided a specific method of financing a municipal light and power plant the city could not utilize any other method of payment. *Kansas Power Co. v. Fairbanks, Morse & Co.,* 142 Kan. 109, 45 P.2d 872 (1935).

Home rule provisions were added to the Kansas Constitution, Art. 12 § 5, in 1961. Cities are given broad powers to determine their local affairs, including levying taxes, fees and charges, subject, however, to an

exception where the state legislature has made laws applicable uniformly to cities within the same class. *Ibid.* Since that constitutional amendment the Kansas court generally has taken a more liberal attitude toward the powers of cities, and will uphold its ordinance unless there is conflict with a state statute or preemption of the field by a state enactment. Sometimes it is stated that the city ordinance must stand unless there is an actual conflict with a state statute. *Claflin v. Walsh,* 212 Kan. 1, 509 P.2d 1130 (1973). In specific instances the Kansas Supreme Court has upheld city ordinances imposing more restrictive closing hours for establishments selling liquor than are contained in state statutes. *See Blue Star Supper Club, Inc. v. City of Wichita,* 208 Kan. 731, 495 P.2d 524 (1972); *Leavenworth Club Owners Ass'n v. Atchison,* 208 Kan. 318, 492 P.2d 183 (1971). It has also upheld a city gun control ordinance paralleling in many respects the state criminal code. *Junction City v. Lee,* 216 Kan. 495, 532 P.2d 1292 (1975).

The cities press upon us the liberal construction argument. They also point out that the statute quoted above states that cities "may" collect delinquent fees in the same manner as counties, and urge that language indicates the ad valorem tax method is simply an additional weapon placed in the city's arsenal of remedies. We do not agree.

The cases stating the liberal construction rules recognize that state preemption and conflict between city ordinances and state statutes present practical problems of construction, and a court must often look at all parts of the state statute, the manifest purpose of the legislature and whether there is actual conflict between the two. *See Junction City v. Lee, supra,* 532 P.2d at 1297–1298; *Claflin v. Walsh, supra,* 509 P.2d at 1135–1136.

While Kan.Stat.Ann. § 65–3410(a) uses "may" language with respect to the cities' use of the county collection method, that same subsection uses the word "may" several more times in a context where it seems surely to have the same meaning as "shall."

Thus it says counties and cities "may" provide for collections, disposal, etc., of solid wastes within their boundaries; the counties "may" provide a schedule of fees, which "may" be billed on a periodic basis. Delinquent fees "may" be collected as provided in the statute; if there are objections commissioners hold hearings and if they think it just they "may" make revisions or corrections. The resulting liens on real estate "may" be collected as ordinary ad valorem taxes.

We are also impressed that *Jennings v. Walsh,* 214 Kan. 398, 521 P.2d 311 (1974), treating sewage fees under the Kansas Water Pollution Act, regarded the state statute as preempting the field. *Zerr v. Tilton,* 224 Kan. 394, 581 P.2d 364 (1978), upholding the mandatory nature of this Kansas Solid Waste Collection Act did not decide the question before us, but it treated the Act as one equally as comprehensive as the Kansas Water Pollution Act. The appellant cities' brief cites a Kansas Attorney General's opinion, 75–260, 9 Op.Atty's Gen. 63 (1975), that the city was not bound to follow the procedure outlined for counties in establishing fees, as support for its position. If that is entitled to weight we note another opinion of that office the following year that collection methods, at least at the county level, are limited to *real* property liens:

> There is no precedent or authority for the assessment of delinquent county solid waste collection charges against *personal* property, and collection of such delinquent charges in the manner of unpaid *personal* property taxes. (Emphasis supplied.)

76–205, 10 Op.Atty's Gen. 54 (1976).

Finally, and most convincing, we note that the approach of the state statute to these fees seems to be one more similar to the levy and collection of a tax than a fee or user approach. Kan.Stat.Ann. § 65–3410 provides for property classification and hearings before commissioners if there are protests, similar to ad valorem tax assessments. The charge is aimed at real property, and appears to be intended to be borne

by the real property owners, at least if the user does not pay. This is a taxation approach, similar to special assessments against real property, even though the parallel is not perfect. Appellees' supplemental brief sets out a very recent opinion of the Kansas State Board of Tax Appeals which took jurisdiction and struck down as unreasonable what is apparently a joint county-city solid waste management plan which excluded from the mandatory fee charge commercial establishments within the cities involved and any property outside the cities' limits. In the Matter of the Protests of Numerous Chautauqua County Taxpayers Concerning Solid Waste Disposal Fees, Kansas State Bd. of Tax Appeals Docket # 2311–7 and 644–78–PR through 739–78–PR (Nov. 21, 1978).

Thus we see the state statutory scheme as one where the fees and collection process are levied against landowners and are not limited to actual users of the services. The city ordinances which would cut off water service for failure to pay solid waste collection fees are aimed at users of water, who may not be the owners of the real estate against whom the solid waste fees would ultimately be collected under the state scheme. This seems to us to be a basic conflict of the nature mentioned in the Kansas cases, where the court would find state preemption. This is especially so when taken together with the comprehensive nature of the Kansas Solid Waste Collection Act, and is consistent with the approach taken in other states. *See Clovis v. Crain,* 68 N.M. 10, 357 P.2d 667 (1960); Annot., 88 A.L.R.2d 1250 (1963).

We note that in the sewage area the state statutes permit both the water cutoff and ad valorem levy, and that this may be regarded as inconsistent under the analysis above. But at least the state statutes are specific on that option. Kan.Stat.Ann. §§ 12–631k, 12–860. And we note those fees are levied only against users of the sewer system, which is necessarily connected to the water system, *Jennings v. Walsh,* 214 Kan. 398, 521 P.2d 311 (1974), whereas this solid waste charge applies whether or not the services are used. *Zerr v. Tilton,* 224 Kan. 394, 581 P.2d 364 (1978).

We see nothing in the other laws relating to trash collection, Kan.Stat.Ann. §§ 12–2101, *et seq.,* contradictory to the scheme of Kan.Stat.Ann. § 65–3410. Nor do we see anything in the references to the cities' power to adopt ordinances in conformity with rules and regulations of the Secretary of Health and Environment, to justify the ordinance provisions here. Those regulations are limited to "storage, collection, transporting, process and disposal of solid wastes," not to the levying of fees and the enforcement thereof.

 We believe the scheme outlined in Kan.Stat.Ann. § 65–3410 is the exclusive method contemplated by the Kansas legislature for the collection of delinquent solid waste charges, and the ordinance provisions challenged here are not authorized under Kansas law. On this basis, without reaching the federal constitutional issues, we affirm the trial court's decision.