Jeffrey O. Ellis, General Counsel
Lawrence Memorial Hospital
Building 82, Suite 1000
10851 Mastin Blvd.
Overland Park, Kansas 66210
Dear Mr. Ellis:
As general counsel for Lawrence Memorial Hospital (LMH), you inquire whether the hospital is subject to K.S.A. 2006 Supp. 12-1675, commonly referred to as the idle funds law.
The idle funds law requires identified governmental entities to invest in statutorily specified investments any moneys not immediately required for the purposes for which the moneys were collected or received.[1]
Additionally, the statute applies equally to:
"[A]ny other governmental entity, unit or subdivision in the state of Kansas having authority to receive, hold and expend public moneys or funds."[2]
The primary issue, then, is whether LMH is considered a "governmental entity, unit or subdivision" for purposes of that statute.
Based upon information provided, we understand that LMH was established in 1919 pursuant to K.S.A. 12-1615[3] by a deed of trust. This instrument provided that:
 "Special trustees shall have control of the expenditures of all moneys to the credit of said Hospital and the supervision, care and custody of said Hospital building and grounds; all moneys received by said Hospital shall be deposited in the treasury of the Board of Trustees, and paid out only upon warrants drawn by the Secretary and upon properly authenticated vouchers of said Board of Trustees."
This type of hospital is typically referred to as a "special trustee hospital," with the board of trustees appointed by the mayor of a city with the consent of the city council.[4] However, it is our understanding that LMH does not receive any tax dollars to support its operation, nor does the board of trustees have authority to levy or collect taxes for its operations. Additionally, you affirmed that all of LMH's income derives from operating revenue[5] or donations received through the LMH endowment fund and that neither the City of Lawrence nor any other taxing entity provides any funds to the hospital. You also inform us that LMH is not an incorporated entity.
Returning then to K.S.A. 2006 Supp. 12-1675, each of three criteria must be met in order for LMH to fall within the statute's parameters:
 • governmental entity, unit or subdivision in the state of Kansas,
 • having authority to receive, hold and expend,
 • public moneys or funds.
Beginning with the last criterion, "public moneys" is not defined in the idle funds law, but is within the Banking Code[6] as:
 "All moneys coming into the custody of the United States government or any board, commission or agency thereof, and also shall mean all moneys coming into the custody of any officer of any municipal or quasi-municipal or public corporation, the state or any political subdivision thereof, pursuant to any provision of law authorizing any such official to collect or receive the same."[7]
Assuming that this definition of "public moneys" may be applied to K.S.A. 2006 Supp. 12-1675,[8] LHM is clearly not a municipal corporation[9] nor a quasi-municipal corporation[10] as those terms are defined in the Banking Code for purposes of understanding what is meant by "public moneys;" and, LMH does not appear to be a public corporation.[11] Further LMH is not "the state" nor has a special trustee hospital been recognized as a political subdivision of the state.[12] Thus, in our opinion the moneys coming into the custody of LMH's trustees are not considered to be "public moneys" under the Banking Code definition. Additionally, we are assured that funds coming into the custody of LHM trustees are not derived from any tax source, but only from operating revenue sources or donations.
Turning to the second criterion, i.e., having authority to receive,hold and expend public moneys or funds, nothing in K.S.A. 12-1615 grants a special trustee hospital this type of authority. On the contrary, outside of operating revenue sources, the statute contemplates "donations of money, personal property or real property" to be used for "establishing, building, furnishing or maintaining a hospital."
Having determined, then, that LMH does not receive, hold or expend public moneys, nor does it have the statutory authority to do so, we need not address the issue of whether LHM is considered a governmental entity, unit or subdivision in the state of Kansas merely by virtue of having its board of trustees appointed by the mayor of the city of Lawrence.[13] We may simply conclude that for purposes of the idle funds statute, K.S.A. 2006 Supp. 12-1675, Lawrence Memorial Hospital is not considered to be a governmental entity, unit or subdivision in the state of Kansas having authority to receive, hold and expend public moneys or funds. Thus, Lawrence Memorial Hospital may invest its funds in investments other than those specified in K.S.A. 2006 Supp. 12-1675.
Sincerely,
Paul J. Morrison
Attorney General
Camille Nohe
Assistant Attorney General
PJM:MF:CN:jm
[1] K.S.A. 2006 Supp. 12-1675(a) and (b).
[2] K.S.A. 2006 Supp. 12-1675(a).
[3] Originally L. 1913, Ch. 203, § 1.
[4] K.S.A. 12-1615(b).
[5] Payment for services by third party payors and patients.
[6] K.S.A. 9-701 et seq.
[7] K.S.A. 9-701(m).
[8] State v. McCombs, 156 Kan. 391 (1943) ("public moneys" as defined in G.S. 1935, 9-301 [same wording as now found in K.S.A. 9-701] applied in determination that certain moneys received by a private entity did not constitute "public moneys"). See also Attorney General Opinion No. 87-157 ("public moneys" as defined in K.S.A. 9-701 applied in determination that rural water district is subject to K.S.A.12-1675).
[9] "Any city incorporated under the laws of Kansas." K.S.A.9-701(n).
[10] "Any county, township, school district, drainage district, or any other governmental subdivision in the state of Kansas having authority to receive or hold moneys or funds." K.S.A. 9-701(o).
[11] "An artificial person (e.g., municipality or a government corporation) created for the administration of public affairs. . . . instrumentalities created by state, formed and owned by it in public interest, supported in whole or in part by public funds, and governed by managers deriving their authority from the state. Black's Law Dictionary 1105-06 (5th ed. 1979) (emphasis added). See Attorney General Opinion No. 2002-46, 2000-12; 93-62. See also 56 Am.Jur.2dMunicipal Corporations, Counties, and Other Political Subdivisions
§ 12 (2000) ("[p]ublic corporations are created for public purposes connected with the administration of the government. . . .").
[12] Generally a political subdivision of the state contemplates a geographical area with boundaries, public elections for representatives, the taxing power and a general public purpose. Attorney General Opinion No. 97-42 and cases cited therein. In Kansas, counties, townships and cities have been recognized as political subdivisions of the state, as well as school districts. Cow Creek Valley Flood Prevention Ass'n v.City of Hutchinson, 166 Kan. 78, 84 (1948), Attorney General Opinions No. 2002-38, 2003-8 and cases cited therein.
[13] We do note that identified governmental entities listed in K.S.A. 2006 Supp. 12-1675 (i.e., "governing body of any county, city, township, school district, area vocational-technical school, community college, firemen's relief association, community mental health center, community facility for the mentally retarded") was retained and expanded in 1977 "to aid in any interpretation that may be required of what is intended by the phrase `or any other governmental entity. . . .'" Report on Kansas Legislative Interim Studies to the 1977 Legislature, filed with the Legislative Coordinating Council, December 1976. A special trustee hospital does not appear to be an entity that would readily be included in this list as an entity similar to the entities enumerated in the statute.